1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, JOSEPH J. LEA, being duly sworn, declare and state as follows:

## I.     INTRODUCTION

1.     I am a Special Agent ("SA") with United States Secret Service ("USSS") and have been so employed since August 2009.  I am currently assigned to the Greenville Residence Office and primarily investigate financial crimes to include wire fraud, identity theft, credit card fraud, bank fraud and money laundering.  Prior to becoming an SA with USSS, I was employed as police officer and detective since 2004, where I conducted numerous investigations of fraud schemes.  I have received both formal and informal training from USSS and other institutions regarding cyber- and financial-related investigations, digital currencies and computer forensics.

## II.  PURPOSE OF AFFIDAVIT

2.     This affidavit is made in support of an application for a warrant to seize the following (the "Subject Funds"):

a.     Any and all Ethereum digital currency ("ETH") held in a custodial wallet under the control of Aux Cayes FinTech Co. Ltd., with OKX.com, identified by account number 343523204612166748 (the "Subject Account"), and under the name of Xin Wang (google translate from 王新) (WANG).  WANG is a resident of China. The current estimated value of the account is $217,892.49 USD.

3.     As described more fully below, there is probable cause to believe that the Subject Funds represent the proceeds of one of more violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1956 (Money Laundering), 1957 (Monetary Transactions in Criminally Derived Property), or a conspiracy to commit the same, (the "Subject

Offenses"), committed by Wang and other unknown co-conspirators (the "Subjects"), and are therefore subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) & (C).

4.    In addition, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853(f) because the property would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.

5.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of, or investigation into, this matter.

6.    Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and amounts are approximations.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

7.    USSS and local law enforcement agencies are investigating a transnational criminal organization running an investment scam. In brief summary, investigating agents have determined that a fraud group is using social engineering to solicit individuals to invest in fraudulent crypto applications. These individuals make what are perceived to be good investments with substantial gains on the

2

1  applications, but due to them being fraudulent, those gains are
2  fictious and used to solicit further and larger investments. By the
3  time the victim becomes aware of the scam, most funds have been
4  laundered and forwarded on past the point investigators can
5  successfully locate the funds.

6      8.   As set forth below, the Subject Account was used by the
7  scammers to receive and launder proceeds of the above-described
8  scheme.  Where the Subject Funds cannot be directly traced to the
9  victim discussed in this affidavit, they constitute laundered or
10  derivative property found in the same account as the digital currency
11  stolen from victims of this scheme.  Finally, investigating agents
12  believe that the Subject Account was created and used primarily for
13  the purpose of laundering scheme proceeds, including outside of the
14  United States.  In sum, there is probable cause to believe that the
15  Subject Funds are subject to seizure and forfeiture by the United
16  States.

17              IV.  **STATEMENT OF PROBABLE CAUSE**

18      9.   Based on witness interviews, documents obtained from third
19  parties, reports of interviews conducted by other law enforcement
20  officers, conversations with other law enforcement officers, and
21  publicly filed documents, I know the following:

22          A.   **Background on Digital Currency**

23      10.  Digital currency (also known as virtual currency or
24  cryptocurrency)[1] is generally defined as an electronic-sourced unit
25  of value that can be used as a substitute for fiat currency (*i.e.*,

26  _____

27      [1] For purposes of this affidavit, the terms "digital currency,"
    "cryptocurrency," and "virtual currency" are used interchangeably and
28  address the same concept.

currency created and regulated by a government). Digital currencies exhibit properties similar to other currencies, but do not have a physical form, existing entirely on the internet. Digital currency is not issued by any government or bank (in contrast with fiat or conventional currencies) and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network, often referred to as the blockchain or public ledger. Digital currency is legal in the United States and accepted for legitimate financial transactions. However, digital currency is often used for conducting illegal transactions or for concealing or disguising the true nature, source, location, ownership or control of illegally obtained proceeds. Bitcoin ("BTC") is one of the most commonly used and well-known digital currencies. Ethereum ("ETH") is another popular and commonly used digital currency.

11. A digital currency exchange (an "exchange") is a business that allows customers to trade digital currencies for other digital or fiat currencies. An exchange can be a brick-and-mortar business, or strictly an online business. Both brick and mortar and online exchanges accept a wide variety of digital currencies, and exchange them for fiat and traditional payment methods, other digital currencies, or transfers between digital currency owners. Most exchanges are located outside the boundaries of the United States in order to avoid regulation and legal requirements, but some popular exchanges operate inside the jurisdiction of the United States. Binance is an example of a popular online exchange that is located outside of the United States but cooperates with and accepts legal process from American law enforcement agencies.

12.   A wallet is a means of storing digital currency identified by unique electronic addresses that allows an individual to conduct transactions on the public ledger.  To access a wallet on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key").  The public address can be analogized to an account number while the private address is similar to a password used to access that account.  Even though the public address of those engaging in digital currency transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public address are not recorded.  If a real individual or entity is linked to a public address, however, it may be possible to determine what transactions were conducted by that individual or entity.  Therefore, digital transactions are often described as "pseudonymous," meaning they are partially anonymous. Most individuals are identified when they use a digital currency exchanger to make a transaction between digital currency and fiat, or through digital currency exchangers that voluntarily or through legal order, cooperate with law enforcement.

**B.    Background on Investment Scams relating to cryptocurrency**

13.   What is common across many investment scams when it comes to cryptocurrency is that they initially contact the victim through various avenues using social media, friends, and messaging apps. In these cases, the victim is often lured into a low level investment where they see large gains and are then solicited to make larger investments. When the suspect has the victim thoroughly committed, the request for more funds, fees, or payment of taxes is initiated when the victim wants to make withdrawals.

C.    **Victim S.H. Loses Digital Currency in the Scam**

14.    Based on conversations, emails, and reports filed by S.H., I learned the following:

a.    Over the past five months, S.H. a resident of Honea Path, S.C. received communication from an individual with whom she believed was a successful crypto investor. She met this individual through a friend who was also likely a victim, but records pertaining to that individual have not been provided at this time. Communication was strictly limited to Telegram, an end to end encrypted communication app. S.H. was however, able to take various screenshots of the communication and trading app. She began with several small deposits of her own Kraken Exchange crypto account to which she sent to a platform known as Quark Wallet. Quark Wallet is a web based application to which any individual can create crypto wallets within the application. Those with extensive tech knowledge can manipulate their created trading platform to display an increase in the investment account they desire. This is often the type of manipulation seen in these cases which is used to convince the victim to make large crypto investment gains and solicit further and often much larger investments.

b.    The victim began with small transfers to the suspect trading application. These deposits were made to other, unrelated crypto wallet addresses. After a few months of what she perceived to be successful crypto trades, and small test withdrawals, she felt it prudent to make a 17.44992405 ETH (valued at $36,110.73) deposit to the "investment" address 0xe45446ffc01fd289ca72d4f3a111a0f444cb4bf. This transaction was made on 3/25/25 via transaction hash

0x429cb1a95c3667f5d850796905d76cf0aa7b3f65412174b9dbe46cf29a73927d.
This could be a regular transaction in a regular investment, but the
initial red flag is that these funds simply moved to this wallet, and
remained there, untouched until 5/6/25. If this were a legitimate
investment, those funds would have been utilized to actually invest
in a fund to be traded as the victim believed and was being shown in
the trading application. Instead these funds remained the sole
deposit in this account until being withdrawn in total on 5/6/25.

       c.   From there, the funds were sent on 5/6/25 to wallet
address 0x56EC88BdEf1157e123dB28d2d8007071E692a1BD via transaction
hash
0x9ad296650feaf26deef33b66350e44351349ea856bd6866cf1b8d2013bbc410d.
In this wallet, the funds were comingled with numerous much smaller
deposits and held for only two days before being forwarded.
Crypto.com reported this wallet in April 2025 as likely being
involved in fraudulent activity.

       d.   After the comingling of reported fraudulent funds,
the victim's funds were then sent from wallet
0x56EC88BdEf1157e123dB28d2d8007071E692a1BD on 5/8/25 out to the OKX
Exchange wallet/account 0x7DE0226921479C8d78fDd1226c501BD281e453b1
(Suspect Wallet) via transaction hash
0x4701754dc59f9d8c5f240344f458c69c3c46b2bf1fe560f42f5841a6f9b9546f.

15.   I reviewed transaction history for digital currency wallet 0x7DE0226921479C8d78fDd1226c501BD281e453b1 (Suspect Wallet) in a commercial blockchain analysis platform. This wallet was created in 2022, but did not receive its first deposit until 3/6/25, about the time this scam began. This is indicative of an account being solely used to conduct this fraud scheme.

16.   Once S.H. attempted to make a substantial withdrawal, she was informed that she would have to pay her "broker" a large fee. Believing that she had made quite a bit from her investments, she agreed to the fee, but arranged for it to come out of her trading account. The scammers then demanded that the funds from an outside source, in an attempt to solicit more funds from the victim. Upon refusal, the broker cut off contact and S.H. could not access her account. It appears that it was at this time, the subject funds were then moved to the OKX Exchange and into the Suspect Wallet / Subject Account.

**D.    Suspect Wallet / Subject Account**

17.   As discussed previously, the Suspect Wallet received its sole ETH deposits from a wallet address identified as fraud and as a

result of violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1956 (Money Laundering), 1957 (Monetary Transactions in Criminally Derived Property), or a conspiracy to commit the same. As such, there is probable cause to believe that these transfers constituted the proceeds of the Subject Offenses.

18. On 6/5/25, I reviewed transaction history in Suspect Wallet provided by the hosting exchange, OKX:

a. Binance identified Wang as the account holder of Suspect Wallet. The wallet became active in August 2022, but did not receive its first deposit until March 2025. Since that time, it has only received two ETH deposits, of which both came from the wallet that have been reported as fraud.

19. Based on my training and experience, I believe Suspect Wallet/Account was used by the Subjects to receive proceeds from victims of wire fraud and to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds obtained from the scam. Therefore, there is probable cause that Suspect Wallet/Account was used to facilitate the commission of the Subject Offenses, contained proceeds of the Subject Offenses and is therefore subject to seizure and forfeiture.

20. The Subject Account bears numerous red flags for a money laundering facilitation account, namely:

a. The Subject Account does not appear to hold digital currency for the use of trading and investing as indicated by the scammers.

b.    The Subject Account remained dormant for years after opening, indicating that the owner was not using it for investment or savings.

c.    Public information searches for WANG do not identify any legitimate businesses associated with WANG which would justify a personal account receiving and sending these volumes of digital currency; and

d.    The transaction activity in the Subject Account appears consistent with a "layering" account in a money laundering scheme, where an account is used primarily to receive criminal proceeds.

21.  Based on my own investigation, records provided by OKX, and my training and experience, I believe the Subject Account was used by the Subjects primarily to receive proceeds of investment fraud scams involving digital currency stolen from victims and to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds obtained from the scam.  Therefore, there is probable cause the Subject Account was used to facilitate the commission of the Subject Offenses, contains proceeds of the Subject Offenses of USDT (the Subject Funds) are subject to seizure and forfeiture.

## V.   CONCLUSION

22.  Based on the facts set forth above, there is probable cause to believe that the Subject Funds are subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) (rendering subject to forfeiture any property involved in a violation of 18 U.S.C. §§ 1956/1957) and § 981(a)(1)(C)

1   (rendering subject to forfeiture any property that constitutes or is

2   derived from proceeds traceable to a violation of 18 U.S.C. §§ 1028,

3   1028A, 1343, 1344).

4       23.   This affidavit has been reviewed by Assistant U.S. Attorney

5   Carrie Fisher Sherard.

                                    _____

7                           Attested to by the applicant in
                            accordance with the requirements of
8                           Fed. R. Crim. P. 4.1 I person

9                           Joseph J. Lea
                            Special Agent

12  Subscribed to and sworn this _10th_
    day of  June, 2025.

14  _____
15  THE HONORABLE WILLIAM S. BROWN
    UNITED STATES MAGISTRATE JUDGE

11